UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| DESTANIE E., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of the Social Security Administration, <br><br> Defendant. | **REPORT AND RECOMMENDATION TO REVERSE AND REMAND COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:25-cv-00521 <br><br> District Judge Dale A Kimball <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Destanie E.[1] brought this action for judicial review of the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration.[2]  The administrative law judge (ALJ) who addressed Ms. E.'s application determined she did not qualify as disabled.[3]  Ms. E. argues the ALJ erred by failing to consider whether her anxiety disorder and post-traumatic stress disorder were medically determinable impairments.[4]  Because Ms. E. is correct, and this error was not harmless,

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in judicial opinions in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 17–30, Doc. No. 6.)

[4] (*See* Opening Br. 4, Doc. No. 7.)

the undersigned[5] recommends the district judge reverse the Commissioner's decision and remand for additional administrative proceedings.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision.  This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B).  (Doc. No. 5.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11]  And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

### APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1)  the claimant is engaged in substantial gainful activity;

2)  she has a severe medically determinable physical or mental impairment;

3)  the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4)  she has the residual functional capacity to perform past relevant work; and

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. § 423(d)(1)(A).

[14] *Id.* § 423(d)(2)(A).

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16] And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. E. applied for disability insurance benefits under Title II of the Social Security Act,[18] alleging she became disabled in June 2022.[19] After an administrative hearing,[20] the ALJ denied benefits.[21]

At step two of the sequential evaluation, the ALJ found Ms. E. had the following severe impairments: "lumbar and cervical degenerative disc disease; right knee degenerative joint disease, status post knee replacement; fibromyalgia; Crohn's disease; anemia; attention-deficit/hyperactivity disorder (ADHD); and bipolar disorder."[22]

---

[15] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] 42 U.S.C. §§ 401–434.

[19] (*See* Tr. 17, 191–92.)

[20] (*See* Tr. 36–73.)

[21] (Tr. 17–30.)

[22] (Tr. 20.)

4

He concluded Ms. E. also had nonsevere impairments: chronic kidney disease, hypertension, hyperthyroidism, and migraines.[23]  And he found several alleged impairments were not medically determinable: lupus, carpal tunnel syndrome, and a hip-related impairment.[24]  The ALJ did not mention anxiety or post-traumatic stress disorder in his step two analysis.[25]

At step three, the ALJ found Ms. E.'s impairments did not meet or medically equal an impairment listing.[26]  The ALJ then determined Ms. E. had the residual functional capacity to perform "light work" with additional physical and mental limitations.[27]  As relevant here, the ALJ found Ms. E. had the mental residual functional capacity to "understand, remember, and carry out simple and detailed instructions" and to "have unrestricted contact with individuals and small groups," but she could have "only occasional contact with groups of five or larger."[28]

At step four, based on this residual functional capacity assessment and the testimony of a vocational expert, the ALJ found Ms. E. could not perform past work as a medical assistant.[29]  But at step five, based on the expert's testimony, the ALJ found

---

[23] (*Id.*)

[24] (Tr. 20–21.)

[25] (*See id.*)

[26] (Tr. 21–23.)

[27] (Tr. 23.)

[28] (*Id.*)

[29] (Tr. 28.)

Ms. E. capable of other jobs in the national economy.[30]  Accordingly, the ALJ found Ms.

E. not disabled and denied her claim.[31]  This decision became final when the Appeals

Council denied Ms. E.'s request for review.[32]

## ANALYSIS

Ms. E. raises a single claim of error: she contends the ALJ failed to consider

whether her anxiety disorder and PTSD were medically determinable impairments at

step two.[33]  In response, the Commissioner asserts any error in failing to consider these

impairments at step two was harmless.[34]  Ms. E. is correct that the ALJ erred at step

two.  And the error was not harmless.

At step two, an ALJ must consider whether the claimant has a severe, medically

determinable physical or mental impairment (or combination of impairments).[35]  To be

medically determinable, an impairment "must be established by objective medical

evidence from an acceptable medical source."[36]

---

[30] (Tr. 28–29.)

[31] (Tr. 30.)

[32] (Tr. 1–3.)

[33] (Pl.'s Opening Br. 5–6, Doc. No. 7.)

[34] (Comm'r's Br. 4–7, Doc. No. 9.)

[35] 20 C.F.R. § 404.1520(a)(4)(ii).

[36] 20 C.F.R. § 404.1521.

In her application for benefits, Ms. E. claimed her anxiety and PTSD were disabling impairments.[37]  The medical record contains numerous references to anxiety and PTSD,[38] and the state agency psychological consultants both found Ms. E.'s anxiety and PTSD were severe, medically determinable impairments.[39]  Despite this evidence, the ALJ did not mention anxiety or PTSD at step two, and he did not evaluate whether they constituted medically determinable impairments.[40]  Given the record evidence, the ALJ erred by failing to consider anxiety and PTSD at step two.  Indeed, the Commissioner does contest this.  Instead, he argues any error was harmless.

An ALJ's "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."[41]  This is because "[a]s long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step."[42]  And after step two, the ALJ

---

[37] (Tr. 283.)

[38] (Tr. 528, 532, 534, 536, 538, 540, 542, 544, 546, 556, 560, 587–89, 593, 607, 667, 670–71, 674–75, 678–79, 686, 987.)

[39] (Tr. 103, 112.)

[40] (*See* Tr. 20–21.)

[41] *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).

[42] *Id.*; *see also* 20 C.F.R. § 404.1520(a)(4) ("If we cannot find that you are disabled or not disabled at a step, we go on to the next step.").

must consider the limiting effects of all medically determinable impairments—both severe and nonsevere.[43]

However, this harmless error analysis does not apply to an ALJ's failure to find an impairment to be medically determinable.[44]  This is because an ALJ is only required to consider medically determinable impairments in assessing residual functional capacity (RFC), but need not account for non-medically determinable impairments.[45] Accordingly, "a failure to find an impairment medically determinable is essentially a step-four error."[46]  Still, the Tenth Circuit has noted "such error would be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC."[47]  In *Ray v. Colvin*, the Tenth Circuit affirmed the ALJ's finding that fatigue was not a medically determinable impairment, but also noted the ALJ "expressly addressed" it in determining the claimant's RFC.[48]  And in *Smith v. Colvin*,[49] the Tenth Circuit found an ALJ's failure to mention a shoulder impairment at step two harmless where the ALJ

---

[43] *See Allman*, 813 F.3d at 1330; 20 C.F.R. § 404.1545(a)(2) (providing all medically determinable impairments, including nonsevere impairments, are considered when assessing residual functional capacity).

[44] *See Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (unpublished).

[45] *See id.*; 20 C.F.R. § 404.1545(a)(2).

[46] *Ray*, 657 F. App'x at 734.

[47] *Id.*

[48] *Id.* at 734–35.

[49] 821 F.3d 1264 (10th Cir. 2016).

discussed the claimant's shoulder when evaluating her RFC and included shoulder-related limitations.[50]

Relying on *Ray* and *Smith*, the Commissioner contends the ALJ adequately considered Ms. E.'s anxiety and PTSD in evaluating her RFC.[51]  The Commissioner points to the following discussion from the portion of the ALJ's decision addressing RFC:

> The medical evidence includes a variety of diagnoses for mental impairments, including *historical diagnoses of anxiety, depressive, and trauma related disorders*.  ADHD and bipolar disorder are the current focus of treatment.  The claimant has not engaged in anything beyond medication management since July 2022.  Mental impairments were considered stable with medication, and she regularly presented with a normal or appropriate mood and affect.  After reporting variations in mood to Dr. Emerson in August 2023, she responded well to lamotrigine.[52]

This discussion is insufficient to demonstrate the ALJ's step-two error was harmless.  While the ALJ referred to anxiety and "trauma related disorders" as "historical diagnoses," medical records during the relevant time period (after Ms. E.'s alleged onset date of June 15, 2022) included diagnoses and treatment of anxiety and PTSD.[53]  These diagnoses also appeared in medical records shortly before the alleged onset date.[54]  Nothing in the ALJ's discussion indicates he considered anxiety and

---

[50] *Id.* at 1266–67.

[51] (Comm'r's Br. 4–7, Doc. No. 9.)

[52] (Tr. 26 (emphasis added) (citations omitted).)

[53] (*See* Tr. 670–71 (record from 9/21/2022); Tr. 667 (record from 12/7/2022); Tr. 987 (record from 4/28/2023).)

[54] (*See* Tr. 686 (record from 3/14/2022); Tr. 674–75 (record from 6/5/2022).

PTSD as ongoing impairments which needed to be accounted for in assessing Ms. E.'s RFC.  And unlike in *Smith*, it is not apparent the assessed RFC included limitations relating to these alleged impairments.  While the RFC included mental limitations, there is no indication these limitations accounted for Ms. E.'s anxiety or PTSD—rather than being based solely on ADHD and bipolar disorder (which the ALJ found severe at step two).

In sum, the ALJ's brief reference to anxiety and trauma disorders as "historical diagnoses" does not establish he adequately considered these impairments in assessing RFC.  Accordingly, the ALJ's failure to consider whether these impairments were medically determinable at step two was not harmless, and reversal is required.  This case must be remanded for the ALJ to properly evaluate Ms. E.'s anxiety and PTSD at step two and, if necessary, at the remaining steps of the sequential evaluation.[55]

## RECOMMENDATION

Because the ALJ erred by not considering whether Ms. E.'s anxiety disorder and PTSD were medically determinable impairments, and the error was not harmless, the undersigned recommends the district judge reverse the Commissioner's decision and remand for additional administrative proceedings.  The parties have the right to object to

---

[55] Ms. E. notes the ALJ also did not consider listings related to anxiety and PTSD at step three.  (Pl.'s Opening Br. 6–8, Doc. No. 7.)  The Commissioner argues the step-three omission was harmless because Ms. E. cannot show she met a listing.  (Comm'r's Br. 8–10, Doc. No. 9.)  The court need not address this issue.  If the ALJ finds anxiety and PTSD are medically determinable impairments on remand, those impairments must also be considered at subsequent steps, including step three.

this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[56]

DATED this 22nd day of April, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[56] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).